IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL SPRINGS,

    Petitioner,                  No. CIV S-04-0910 MCE JFM P

    vs.

SCOTT KERNAN, Warden,

    Respondent.             FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding in propria persona with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 2003, petitioner pled no contest to two counts of lewd and lascivious acts with a child under the age of 14, and was sentenced to eight years in prison. Pursuant to the plea agreement, two other counts were dismissed. Petitioner raises six claims that his prison sentence violates the Constitution.

PROCEDURAL BACKGROUND

        Petitioner filed a timely appeal, raising the sole claim that the imposed fine violated the *ex post facto* provisions of the United States Constitution. (Answer, Ex. A.) The California Court of Appeal, Third Appellate District, affirmed the conviction. (Answer, Ex. C.)

        On November 17, 2003, petitioner filed a petition for writ of habeas corpus with the Butte County Superior Court. (Answer, Ex. D.) That petition was denied on January 15, 2004. (Answer, Ex. E.) The Butte County Superior Court stated its reasons as follows:

       1. The vague, unsupported, and conclusionary allegations contained in the Petition are insufficient to allow for intelligent consideration of the issues which petitioner had attempted to raise. (In re Swain (1949) 34 Cal.2D 300; In re Patton (1918) 178 Cal. 629).

       2. Petitioner has failed to establish a prima facie case for relief on habeas corpus (In re Lawler, 23 Cal.3rd 190, 194).

       3. Failure to raise issue on appeal. In absence of special circumstances constituting an excuse for failure to employ that remedy, a writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction. (In re Walker, 10 Cal.3rd 764, 773 and In re Clark, 5 Cal. 4th 750, 765.)

       4. Issues resolved on appeal cannot be reconsidered on habeas corpus. (See In re Waltreus (1965) 62 Cal.2d 218, 225.)

(Answer, Ex. E.)

       On January 23, 2004, petitioner filed a petition for writ of habeas corpus in the Third District Court of Appeal. (Answer, Ex. F.) That petition was denied on January 29, 2004, without comment. (Answer, Ex. G.)

       On February 9, 2004, petitioner filed a petition for writ of habeas corpus with the California Supreme Court. (Answer, Ex. H.) That petition was denied on March 24, 2004, without comment. (Answer, Ex. I.)

## FACTS[1]

The complaint alleged the section 288(a) violations occurred between August 1, 1990, and July 1997. [Petitioner] entered his plea of no contest to the section 288(a) violations prior to a preliminary hearing. At the change of plea hearing, [petitioner] stipulated to a factual basis for the plea. Thus, there was no testimony regarding the precise dates when the offenses occurred.

The probation report, however, provides factual context. The report relates that the victim stated the molestations commenced in 1990, when she was seven years old, and continued until 2000,

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Springs, No.C043231 (November 4, 2003), a copy of which is attached as Exhibit C to Respondent's Answer, filed September 22, 2004.

when she was 17 years old.  The probation report recounted the victim's account of molestations occurring in 1990, 1993, 1996, 1997, 1998, and 2000.

(People v. Springs, slip op. at 2.)

## ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

/////

(2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

II. Petitioner's Claims

  A. Ineffective Assistance of Counsel

By his first ground for relief, petitioner alleges a denial of his constitutional right to effective assistance of counsel. Petitioner claims that defense counsel failed to investigate the statute of limitations.

To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See Strickland v. Washington, 466 U.S. 668, 688 (1984). After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional, competent assistance. See id. at 690.

"There is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689). The petitioner must therefore show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.

After demonstrating that counsel's performance fell below an objective standard of reasonableness, the petitioner must affirmatively prove prejudice. See Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's

4

unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. Under this prong of the test, a court cannot find that counsel was ineffective unless the court determines that the entire trial or other proceeding was "fundamentally unfair or unreliable" because of counsel's ineffectiveness. Lockhart v. Fretwell, 506 U.S. 364, 368-69 (1993); see also Wilson v. Henry, 185 F.3d 986, 988 (9th Cir. 1999).

A claim of negligence in conducting pretrial investigation can form the basis for a claim of ineffective assistance of counsel. See United States v. Tucker, 716 F.2d 576, 582-83 & n.16 (9th Cir. 1983). "[C]ounsel must, at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client." Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994) (a failure to investigate which led to an uninformed decision not to call a witness who had admitted to committing the crime was not a strategic decision). On the other hand, a failure to investigate may not be ineffective assistance where it was due to the defendant's failure to inform the attorney of relevant facts or the defendant's insistence on a particular course of action. See Langford v. Day, 110 F.3d 1380, 1386-88 (9th Cir. 1996), cert. denied, 522 U.S. 881 (1997).

In the present case, petitioner pled guilty on the advice of counsel. Petitioner's collateral attack on his conviction is confined to whether the underlying plea was both counseled and voluntary. See United States v. Broce, 488 U.S. 563, 569 (1989); accord Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant had solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel [to plead guilty] was not within the standards . . . ."). See also Sanchez v. United States, 50 F.3d 1448, 1454 (9th Cir. 1995) (holding that it is only ineffectiveness of counsel directly relating to the defendant's guilty plea

5

that is not waived by such a plea); Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994); Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992).

Here, counsel cannot be held ineffective for failing to investigate the statute of limitations. The criminal complaint was filed on May 29, 2002, and charged petitioner with continuous sexual abuse of a child under the age of 14 (count I, Cal. Penal Code Section 288.5), lewd acts upon a child (counts II and III), and lewd acts upon a child while being more than 10 years older than the victim (count IV). The criminal complaint was based on notice provided to police by the victim's sister on December 20, 2001. (Pet., Ex. E (police report).) The victim's sister explained that the victim had disclosed the molestation allegations in October of 2001, which the victim's mother corroborated. (Id.) Petitioner pled guilty to counts II and III, which alleged that the illegal conduct occurred from August 1, 1990 through July of 1997.[2]

Because the complaint alleged a continuous course of conduct under Cal. Penal Code § 288.5, the six year statute of limitations period had not yet run. For a continuous course-of-conduct crime such as § 288.5, People v. Vasquez, 51 Cal.App.4th 1277, 1285 (1996), the crime is complete when the course of conduct ends. Wright v. Superior Court, 15 Cal.4th 521, 525 (1997); see also People v. Zamora, 18 Cal.3d 538, 548 (1976). In this case, the last criminal act was 1997, so the statute of limitations period did not run until 2003. The criminal complaint was filed in May, 2002, well within the six year statute of limitations period.

However, even if petitioner's counsel had raised the issue of statute of limitations, the statute would be extended under Cal. Penal Code Section 803 (f)[3] and (g).[4] People v. Maguire, 102 Cal.App.4th 396, 400 (2002); Ream v. Superior Court, 48 Cal.App.4th 1812, 1821

---

[2] The abstract of judgment notes Count II was committed in 1991 and Count III was committed in 1997. (Pet., Ex. A.)

[3] Penal Code section 803, subdivision (f), extends the limitations period to one year after a report of sexual abuse by a child under age 18 to either a responsible adult or an agency.

[4] Section 803(g) applies whether or not the victim is still under age 18 and begins the one-year period on the date the report is made to a law enforcement agency.

6

& n.7 (1996). In the criminal complaint, the prosecution specifically alleged petitioner committed a lewd act upon a child in violation of Cal. Penal Code Section 288(c)(1) from August 1, 1997 through July of 1999 and alleged petitioner had substantial sexual conduct with the victim who was under 14 years of age. (Answer, Ex. J.) Thus, extensions of the limitations period under both Cal. Penal Code Sections 803(f) and (g) were met.

Petitioner's citation to Stogner v. California, 539 U.S. 607 (2004) is unavailing because the statute of limitations period had not yet run prior to 1994. The Stogner court stated its holding did not affect or "prevent the State from extending time limits . . . for prosecutions not yet time barred." Id. at 632. Cal. Penal Code Section 803(g) became effective January 1, 1994. "Thus, the only consequence of Stogner is that any enumerated crime must be committed or the limitations period in section 800 or 801 must expire after January 1, 1994 (the effective date of the statute) in order for the extended one-year period to apply." People v. Renderos, 114 Cal.App.4th 961, 965 (2003). Put another way, Sections 803(f) and 803(g) apply to limitations periods that were unexpired when the Legislature added those subdivisions in 1990 and 1994. Stogner, 539 U.S. at 632; Renderos, 114 Cal.App.4th at 965.

Here, the earliest offense noted in petitioner's plea agreement was 1990. The six year statute of limitations period had not yet run when Cal. Penal Code Section 803(g) became effective in 1994. Thus, the statute of limitation period could be extended by section 803(g) without violating petitioner's constitutional rights. See also People v. Superior Court, 116 Cal.App.4th 1192 (2004)(Statute allowing filing of otherwise time-barred charge of lewd act with child one year after victim's report to law enforcement agency was permissible extension of, rather than unconstitutional revival of, statute of limitations, as applied to defendant for whom original six year limitations period was not expired when statute became effective.)

Because the action was not time-barred, petitioner's counsel cannot be deemed ineffective for failing to investigate or raise that claim. Accordingly, the state court's rejection of petitioner's first claim for relief was neither contrary to, nor an unreasonable application of,

controlling principles of United States Supreme Court precedent. Petitioner's first claim for relief should be denied.

### B. Validity of Petitioner's Guilty Plea

By his second, fifth and sixth grounds for relief, petitioner asserts that his guilty plea was constitutionally defective.

Federal due process requires that a guilty plea be knowing and voluntary. See Parke v. Raley, 506 U.S. 20, 28-29 (1992) (citing Boykin v. Alabama, 395 U.S. 238, 242 (1969)); Henderson v. Morgan, 426 U.S. 637, 644-45 (1976); Brady v. United States, 397 U.S. 742, 748 (1970); Allen v. Bunnell, 891 F.2d 736, 737 (9th Cir. 1989) (per curiam). The defendant must have "a full understanding of what the plea connotes and of its consequence." Boykin, 395 U.S. at 243-44. "Before a court may accept a defendant's guilty plea, the defendant must be advised of the 'range of allowable punishment' that will result from his plea." Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir. 1988) (quoting United States ex rel. Pebworth v. Conte, 489 F.2d 266, 268 (9th Cir. 1974)).

A defendant's waiver of his constitutional rights does not have to be explicit as to each right, as long as his plea is "voluntary and intelligent." See United States v. Carroll, 932 F.2d 823, 824-25 (9th Cir. 1991). Thus, the trial court is not required "to enumerate all of the rights a defendant waives as long as the record indicates that the plea was entered voluntarily and understandingly." Rodriguez v. Ricketts, 798 F.2d 1250, 1254 (9th Cir. 1986), cert. denied, 479 U.S. 1057 (1987); accord Rodriguez v. Ricketts, 777 F.2d 527, 528 (9th Cir. 1985) (per curiam) ("[T]he failure to give specific advice to the petitioner of a right against self-incrimination will not invalidate a plea where it otherwise appears that the petitioner was aware that he had the right not to plead guilty."). The relevant inquiry is whether a guilty plea was voluntary and intelligent under the totality of the circumstances. See North Carolina v. Alford, 400 U.S. 25, 37-38 (1970).

"A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from

counsel was not within the range of competence demanded of attorneys in criminal cases." United States v. Signori, 844 F.2d 635, 638 (9th Cir. 1988); see Tollett v. Henderson, 411 U.S. 258, 266-67 (1973); McMann v. Richardson, 397 U.S. 759, 770-71 (1970).  When a defendant challenges the voluntariness of his plea, "the representations of the defendant, his lawyer, and the prosecutor . . . , as well as any findings made by the judge accepting the plea, constitute a formidable barrier" to the attack.  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

      A review of the transcript of the hearing at which petitioner entered his no contest plea reflects that petitioner's plea was knowing and voluntary.  (RT 1-2.)  Petitioner also signed a plea of no contest (felony) form, initialing all the applicable boxes, including the statement "I am entering my pleas freely and voluntarily, without threat or fear to me or anyone closely related to me."  (Pet., Ex. B; CT 14-17.)

      In his second claim, petitioner alleges his conviction was secured in violation of *ex post facto* laws.  Because petitioner pled no contest, this claim is not cognizable on habeas review.  Even assuming, *arguendo*, the court could reach this claim, the claim would fail.  As noted above, Stogner expressly stated it did not "prevent the State from extending time limits . . . for prosecutions not yet time-barred."  Stogner, 539 at 632.  Because the limitations period herein expired after January 1, 1994, section 803(g) does not violate any constitutional provision against *ex post facto* laws.  See also People v. Renderos, 114 Cal.App.4th at 965.

      In his fifth claim, petitioner contends he was unlawfully convicted on the basis of perjured testimony.  Petitioner cites discrepancies in the victim's statements to the Truckee Police, the district attorney investigator and the Butte County district attorney.  As noted above, this claim is not cognizable on habeas review.  Tollett, 411 U.S. at 267.  By pleading no contest, petitioner admitted the criminal acts.  Petitioner's reliance on Napue v. Illinois, 360 U.S. 264 (1959) is misplaced.  In Napue, the Supreme Court addressed the prosecution's misconduct with respect to the knowing presentation of false evidence.  Id. at 265.  Because petitioner admitted

/////

the acts herein, the victim was not required to give testimony under oath. Thus, no perjured testimony was used to secure petitioner's conviction.

In his sixth claim, petitioner contends he was questioned by Butte County police officers who failed to advise him of his Miranda[5] rights prior to eliciting statements that related to the charged offenses. This claim is not cognizable on habeas review. Tollett, 411 U.S. at 267; Blackledge v. Allison, 431 U.S. at 73-74. See also Hudson v. Moran, 760 F.2d 1027, 1029-30 (9th Cir. 1985) (voluntary and intelligent guilty plea precludes federal habeas relief based upon "independent claims" of pre-plea constitutional violations); Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992) ("petitioner's nolo contendere plea precludes him from challenging alleged constitutional violations that occurred prior to the entry of that plea"). Moreover, petitioner failed to provide specific facts in support of this claim, other than to cite a June 22, 2002 police report which is not attached to his petition or otherwise provided in the record. (Petition at 13.) "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994); Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995).

Because petitioner's second, fifth and sixth claims do not concern whether his no contest plea was unintelligent or involuntary, these claims must be rejected.

C. Third Claim

Petitioner's third claim is that he was denied the benefits of his plea bargain agreement because he was not granted probation. Petitioner contends he was advised by his attorney, Grady Davis, "to admit to alleged offense, and guaranteed that the petitioner would incur only probation, which the Judge Benson confirmed on November 14, 2002." (Pet. at 9.)

However, the record reflects that petitioner changed his plea during the July 18, 2002 hearing, as follows:

---

[5] Miranda v. Arizona, 384 U.S. 436 (1966).

10

| | | |
|---|---|---|
| 1 | THE COURT: | Good afternoon, Ladies and Gentlemen.  On the 1:30 calendar, People versus Daniel Springs. |
| 2 | MR. DAVIS: | Thank you, Your Honor.  Grady Davis appearing with Mr. Springs.  Mr. Goldkind is reviewing the plea form in this matter. |
| 3 | | |
| 4 | THE COURT: | Is there a proposed disposition? |
| 5 | MR. GOLDKIND: | He is pleading to count II and III, I believe, Your Honor. |
| 6 | MR. DAVIS: | That's correct.  He's entering a no contest plea to II and III, 288(a).  Count I will be dismissed as will the enhancement; as will Count IV the – |
| 7 | | |
| 8 | THE COURT: | The 288(c)(1). |
| 9 | MR. DAVIS: | Yes. |
| 10 | THE COURT: | Mr. Springs, I'm holding the plea form here in my hand.  Do you have any questions about this form? |
| 11 | | |
| 12 | [PETITIONER] | No, sir. |
| 13 | THE COURT: | Did you read and understand the information on the form? |
| 14 | [PETITIONER]: | Yes, sir. |
| 15 | THE COURT: | After you read and understood it, did you place your initials, DS, in the boxes? |
| 16 | | |
| 17 | [PETITIONER]: | Yes, sir. |
| 18 | THE COURT: | Have you had enough time to discuss this with Mr. Davis? |
| 19 | [PETITIONER]: | Yes, sir. |
| 20 | THE COURT: | Does it accurately state the terms of your plea? |
| 21 | [PETITIONER]: | Yes, sir. |

(RT 1-2.)

The plea form reflects that petitioner was aware he could receive state prison in the instant case. (CT 14-17.) The plea form, bearing petitioner's initials and signature, confirmed that petitioner admitted he knew the following: the maximum sentence he could serve as a result of his plea was 16 years in state prison (CT 16); his attorney explained to him the

11

possibility he could be sentenced consecutively on each of the two pleas (CT 16); he had not been induced to enter his pleas by any promise or representation except the dismissal of all the other pending charges and enhancements (CT 15); and the matter of probation and sentencing would be determined solely by the Superior Court Judge (CT 17).  By crossing out the portion of the plea form addressing situations where there is a "county lid" or "no immediate state prison" disposition, petitioner acknowledged those items did not apply to him. (CT 17.)  Neither the colloquy nor the plea form confirm that petitioner had negotiated a plea agreement for probation rather than prison time.

Petitioner has provided no transcript or order supporting his statement that Judge Benson confirmed on November 14, 2002 that petitioner would only receive probation. (Pet. at 9.)  The clerk's transcript reflects that a hearing took place on November 14, 2002.  (CT at 63.)  Both petitioner and his counsel were present.  Minutes from the November 14 hearing reflect that the court received a memo from probation seeking a continuance of the sentencing hearing and the hearing was continued to December 12, 2002. (CT at 63.)  The December 12 hearing was continued to January 16, 2003.  (CT at 64.)

There was also no mention of a plea bargain for probation at the January 16, 2003 sentencing hearing. (RT 5-13.)  Petitioner substituted in new counsel who confirmed she had met with petitioner and they were prepared to proceed with sentencing. (RT 5.)  Petitioner's counsel did not argue for probation; rather, she argued that petitioner be sentenced to an additional year of county jail rather than to a state prison commitment. (RT 8.)

The court went on to deny petitioner's application for probation "even though there [were] no statutory restrictions on granting probation in this case." (RT 10.)  The court explained that "this [was] an appropriate prison term case and probation [was] denied because of the nature and seriousness and circumstances of the crimes."  (RT 10.)

On this record, the court cannot find that petitioner was denied the benefits of his plea bargain.  The state court's rejection of petitioner's third claim for relief was neither contrary

to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent. Petitioner's third claim for relief should be denied.

### D. Fourth Claim

Petitioner's fourth claim is that his trial and appellate counsel failed to provide petitioner copies of the November 14, 2002 transcript and police report which denied petitioner the right to prepare his habeas petition. (Petition at 10.)

Petitioner has failed to provide adequate factual support for this claim. The letter from petitioner's appellate counsel stated that if he had the November 14, 2002 transcript, he would have given it to petitioner with the rest of the files counsel had delivered to petitioner. (Pet., Ex. C.) Counsel further expressed that he did not have the police report, but that petitioner could obtain that from his trial counsel or from the police department. (Id.) Petitioner has not demonstrated that he attempted to seek these materials either from trial counsel or the police department, or that he sought these materials from the state court. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." James v. Borg, 24 F.3d at 26; Jones v. Gomez, 66 F.3d at 204-05.

But even if petitioner was deprived of these documents, petitioner has failed to demonstrate that the deprivation had a substantial or injurious effect on petitioner's sentence. Brecht v. Abrahamson, 507 U.S. 619 (1993).

> In prior cases involving an indigent defendant's claim of right to a free transcript, this Court has identified two factors that are relevant to the determination of need: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript.

Britt v. North Carolina, 404 U.S. 226, 227-28 (1971), citing Draper v. Washington, 372 U.S. 487, 495-96 (1963). Petitioner has not demonstrated how the transcript and the police report would have assisted him in raising meritorious claims on habeas review, particularly in light of petitioner's no contest plea. It is unlikely that a transcript of a hearing that continued petitioner's

13

sentencing hearing could have assisted petitioner. (CT at 63.) Accordingly, petitioner's fourth claim for relief should be denied.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 24, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

001;sprin0910.157